IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

ERRANDS PLUS INC., d/b/a RMA
WORLDWIDE CHAUFFEURED
TRANSPORTATION,

    Plaintiff,

v.	Civil Action No. 3:25-cv-00098-JHY-JCH

SIGNATURE FLIGHT SUPPORT LLC, and
SIGNATURE AVIATION SERVICES
CORPORATION,

    Defendants.

## DEFENDANT SIGNATURE'S SUPPLEMENTAL BRIEFING

COMES NOW Defendant Signature Flight Support LLC d/b/a Signature Aviation and Defendant Signature Aviation Services Corporation[1] (collectively "Signature"), by counsel, and pursuant to this Court's December 20, 2025 Order (Doc 11), respectfully jointly submit this Supplemental Brief addressing the issues of (1) irreparable harm and (2) likelihood of success of the Emergency Motion for Temporary Injunction filed by Plaintiff Errands Plus Inc., d/b/a RMA Worldwide Chauffeured Transportation.  In support of their position on these issues, Signature states as follows:

### I.    INTRODUCTION

RMA's request for emergency injunctive relief in this case fails for the same fundamental reason that the Supreme Court rejected similar efforts in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008): RMA's alleged injuries are economic, compensable, speculative, and contingent on disputed merits. RMA attempts to convert a private commercial dispute arising out of its exclusion from Signature's private aviation facilities, following a serious safety incident, into a basis for extraordinary equitable relief that equity does not permit. Under *Winter* and other controlling authority, both factors compel denial of the requested relief.

---

[1] RMA names "SIGNATURE AVIATION SERVICES CORPORATION" as a defendant, but this is not a proper party. It does not operate any FBO and would be unable to effectuate the relief RMA seeks in this motion. It is not a proper party to this action under any circumstances.

## II. RMA CANNOT ESTABLISH IRREPARABLE HARM UNDER *WINTER*

A preliminary injunction is an extraordinary remedy that requires a clear showing of irreparable harm, meaning injury cannot be adequately remedied by money damages. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *see Sampson v. Murray*, 415 U.S. 61, 90 (1974) (finding that purely financial injuries are typically compensable by damages and do not warrant injunctive relief); *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (holding that "when anticipated economic losses will be recoverable at the end of litigation, then those losses generally will not qualify as irreparable for purposes of preliminary relief."); *Hughes Network Sys., Inc. v. InterDigital Comms. Corp.* 17 F.3d 691, 694 (4th Cir. 1994) (holding that financial losses that can be recovered by a prevailing party at the close of litigation ordinarily will not justify preliminary relief).

Loss of earnings or reputational harm, standing alone, do not afford a basis for a finding of irreparable injury. *Sampson*, 415 U.S. at 90. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id*.

RMA's asserted harms are lost revenue, lost business opportunities, alleged customer attrition, and reputational and goodwill damage arising from exclusion. But these are classic economic injuries. Evaluated under *Winter* and the well-established standards of the Fourth Circuit, these allegations fail to justify an injunction as a matter of law.

### A. The Alleged Injury is Compensable through Monetary Damages

RMA's own allegations confirm that its injuries are fundamentally economic and, if proven, fully compensable. It quantifies its alleged losses at over $1,000,000 in revenue from Signature's leaseholds in eleven months, with broader relationships allegedly exceeding $20,000,000.00 annually. Compl. ¶¶ 76-77. These figures demonstrate that any harm can be calculated based on historical sales data, contract values, and market rates.

2

The Fourth Circuit has held that lost revenue can be remedied by monetary damages. *See* M*ountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 217 (4th Cir. 2019) (holding that economic harms like lost revenue are not irreparable because they "can be remedied by monetary damages."); *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 191 (4th Cir. 2013) (en banc).

In *Hughes*, the Fourth Circuit held unequivocally that "irreparable injury" does not exist where damages are "readily calculable." 17 F.3d 691, 694 (4th Cir. 1994). Even where damages calculations may be complex or contested, the availability of a monetary remedy defeats irreparable harm. *Id.*

Similarly, in *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, the Fourth Circuit rejected irreparable harm where the alleged injury was "primarily economic." 952 F.2d 802, 812 (4th Cir. 1991). The court explained that "[w]here the harm is fully compensable by money damages, the plaintiff has an adequate remedy at law and is not entitled to preliminary injunctive relief." *Id.*

Here, RMA affirmatively alleges a detailed revenue history, quantifies annual income, and attributes specific dollar amounts to affected customers. That factual record forecloses its argument that damages are incalculable. Indeed, taking them at face-value, RMA's own declarations demonstrate the opposite: RMA has the historical data it claims is necessary to compute any alleged loss. As such, the extraordinary remedy of injunctive relief is not available to RMA.

### B. RMA's Allegations are Insufficient to show a Loss of Goodwill

RMA relies heavily on the assertion that exclusion from Signature's facilities will cause permanent loss of customers and goodwill. That argument fails under *Winter* and its progeny. Before *Winter*, some courts treated potential customer loss as presumptively irreparable. The Fourth Circuit itself has recognized that this approach is no longer valid. In *Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342, 346 (4th Cir. 2009), (*cert. granted, judgment vacated,* 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), and *adhered to in part sub nom,* 607 F.3d 355 (4th Cir. 2010))*,* the Court explained that *Winter* rejected flexible approach that diluted the irreparable harm requirement.

Critically, the Supreme Court has cautioned that even harms described as "irreparable" in the abstract must be proven with evidence, not assumed. *Winter*, 555 U.S. at 22. Allegations of customer loss

3

must show that the harm is certain, imminent, and non-compensable, not conjectural. "[T]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Holbrook v. Univ. of Virginia*, 706 F. Supp. 2d 652, 655 (W.D. Va. 2010) (quoting *Sampson v. Murray*, 415 U.S. at 90).

Here, RMA offers no concrete evidence that customers cannot be recovered, that relationships are permanently severed, or that reputational harm cannot be repaired through ordinary market competition. At most, RMA asserts that customers may choose competitors, which is a risk inherent in all commercial disputes, like this one here where RMA asks this Court to tip the scales in its favor.

The Fourth Circuit has rejected such arguments. In *Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 283 (4th Cir. 2002), the court held that "loss of customers" does not constitute irreparable harm where the plaintiff can seek damages for lost sales. The possibility that customers may not return is insufficient without concrete proof of permanent loss. *Id*.

RMA's assertions of goodwill erosion are speculative and fail to demonstrate the kind of permanent, unquantifiable injury required. Accordingly, no irreparable harm exists, and the request for injunctive relief should be denied. Even if RMA thinks Signature breached a non-existent contract, then RMA can pursue damages in the ordinary course of business. RMA's alleged injury, if successfully litigated, is compensable by monetary damages, and the Court denying immediate injunctive relief would not create a permanent loss of customers or the loss of goodwill.

C. **The *Winter* Standard of Clear Showing Has Not Been Met**

To be granted this extraordinary remedy, RMA must demonstrate "a clear showing of irreparable harm" under the standard set forth in *Winter*, but it has not and cannot demonstrate such a clear showing "that it will likely be irreparably harmed absent preliminary relief." *Real Truth About Obama, Inc. v. Fed. Election Comm'n, supra* at 347, *citing Winters at 374-376.* But here*,* RMA has not identified any harm that is not completely economic. As discussed above, economic losses do not constitute irreparable harm. RMA did not identify any imminent, non-compensable injury to justify emergency relief. Furthermore, RMA has not shown that damages could not return them to the status quo. For all these reasons, RMA

falls well short of a "clear showing" of irreparable harm, and its request for injunctive relief must be denied.

### III. RMA IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

RMA is unlikely to succeed on the tortious interference with contract, interference with a business relation, or on its statutory conspiracy claims. Moreover, Signatures actions were justifiable, as a private entity is not entitled to enter upon another private entity's property. There is no contractual obligation or legal duty violated—and there is little likelihood of success on the merits of any of RMA's alleged claims.

#### A. Tortious Interference

Virginia recognizes two related but distinct tortious interference claims: tortious interference with contract and tortious interference with prospective business relations or expectancy. The elements for tortious interference with contract are: (1) the existence of a valid contractual relationship; (2) Defendant's knowledge of that relationship; (3) intentional interference inducing or causing a breach or termination; and (4) resultant damage to Plaintiff. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985); *Commerce Funding Corp. v. Worldwide Sec. Services Corp.*, 249 F.3d 204, 210 (4th Cir. 2001).

For tortious interference with prospective business relations or economic damages, a claimant must (1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference. *Id.* at 213.

"[A] plaintiff must also demonstrate that the defendant employed "improper methods." *Id.;* *see Maximus, Inc. v. Lockheed Info. Mgmt. Sys., Inc.,* 254 Va. 408, 493 S.E.2d 375, 378–379 (1997); *see also Duggin v. Adams,* 234 Va. 221, 360 S.E.2d 832, 836 (1987). Methods of interference that are considered improper include actions that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, as well as violence, threats, intimidation, bribery,

5

unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of insider or confidential information, or breach of a fiduciary relationship. *Duggin v. Adams,* 234 Va. 221, 360 S.E.2d 832 (1987).

    RMA's claim for tortious interference fails on multiple grounds. First, for both counts, there is no underlying contract or expectancy with which Signature interfered in a manner causing actual breach or termination of a contract. RMA conflates the ban's result with the reason for the ban, the latter being the only relevant factor for this analysis. The ban was solely an internal Signature decision with no consideration as to the effect it would have on RMA's contracts, the substance of which remain unknown to Signature. It was irrelevant to the decision.

    RMA vaguely alleges it "contracts with thousands of individuals and entities each year," but does not specify any particular contract, let alone one that was breached or terminated due to the access restriction. Compl. ¶ 21. The ban on Signature's private leaseholds does not compel customers to breach their agreements with RMA; customers remain free to fulfill contracts by using RMA's services off leasehold. Without evidence of induced breach—beyond speculative claims that the ban induces terminations—Count I fails under *Chaves*. Similarly, as for Count II, any expectancy in future business is too attenuated, as it assumes an entitlement to unrestricted access on Signature's property, which RMA concedes is not guaranteed. Compl. ¶ 16 (acknowledging Defendant's "autonomy to control access.").

    Additionally, for tortious interference with contractual relations, an interferor may escape liability by proving that the interference was justified or privileged because the interferor acted for the purpose of protecting its own "financial interest." *Commerce Funding Corp.*, 249 F.3d at 210 (citing *Chaves*, 230 Va. at 103). And that is exactly what happened here. Signature issued a ban against RMA related to the underlying incident on February 28, 2025, in which an RMA employee's actions caused damage to Telus's aircraft. Compl. 50-51. Therefore, Signature was well within its own economic interest, as a private entity, to ban another private entity from entering onto its property and potentially cause any additional damage in future events where RMA could similarly refuse to accept responsibility.

6

Even assuming valid contracts, Signature's conduct is not improper such that Plaintiff could establish a prima facie case under Virginia law. In support, RMA cites to *Schaecher v. Bouffault*, 290 Va. 83, 106 (2015) (citing *Chaves v. Johnson*, 230 Va. 112, 118-19) (1985)). However, *Schaecher* merely outlines the elements for a claim of tortious interference. In fact, *Schaecher* supports Signature's position that RMA's claim fails, because no contract has been terminated or violated. *See id.* As such, an action by RMA for Tortious Interference will fail as a matter of law.

      i.      **RMA Must Prove Improper Conduct, Not Mere Interference**

Under Virginia law, tortious interference—whether with contract or business expectancy—requires proof that the defendant employed improper methods. The Fourth Circuit has consistently recognized that justification and privilege defeat such claims. In this case, it is evident that Signature's actions were a measured response to a serious incident that RMA caused on Signature's private property, resulting in potential liability for Signature, and then refused to accept responsibility for its actions.

In *Commerce Funding Corp. v. Worldwide Security Services Corp.*, the Fourth Circuit explained that interference is not tortious if it is "justified or privileged." 249 F.3d 204, 210–11 (4th Cir. 2001). Actions taken to protect legitimate business interests do not constitute improper interference. *Id*. Indeed, it is Signature's "legitimate business interest to ensure that bus companies coming onto its private property—where expensive and sensitive aircraft are parked—have competent employees who (i) follow directions. (ii) avoid driving into large stationary objects, (iii) are sufficiently insured; and (iv) take responsibility for their wrongdoing. RMA has failed in all these respects and now represents a threat to Signature's operations and customer relationships.

Similarly, in *Dunn Construction Co. v. Cloney*, the Fourth Circuit emphasized that conduct motivated by legitimate economic interests—even if it disadvantages another party—does not amount to tortious interference. 278 F.3d 253, 262 (4th Cir. 2002). So, while it may indeed disadvantage RMA to lose access to Signature's private leaseholds, it is certainly not for illegitimate economic interests or done improperly. Since RMA cannot show a likelihood of success on its claims, RMA's request for injunctive relief fails.

7

### ii.     RMA Cannot Show Intentional Inducement of Breach

To succeed on a tortious interference with contract claim, RMA must show intentional inducement of breach. Mere knowledge that interference may occur, as RMA alleges, is insufficient. In *Ward v. Coastal Carolina Health Care, P.A.*, the Fourth Circuit held that a defendant must act "with the purpose of causing a breach." 597 F.3d 381, 393 (4th Cir. 2010). Here, Signature acted to protect its own facilities, not to induce any customer to breach a contract with RMA. Signature has no knowledge of and is not a party to any such contracts, nor did it intentionally induce any breach. Any of RMA's customers' decisions, if they made any, would be independent, lawful business choices—not the product of targeted inducement by Signature.

Indeed, Signature has no "dog in that fight." Signature does not compete with or provide business to RMA. It has no motive to interfere in any contract RMA has with customers and does not involve itself in the private bus industry. Signature merely previously allowed RMA on its ramps to pick up or drop off mutual customers, but with that privilege comes inherent responsibility. And RMA refuses to accept that responsibility, thus banning itself by its own actions. As such, its request for injunctive relief fails.

### iii.     RMA's Business Expectancy Claim Fails for the Same Reasons

To establish tortious interference with prospective economic advantage under Virginia law, "a plaintiff must: (1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference." *Com. Funding Corp. v. Worldwide Sec. Servs. Corp.,* 249 F.3d 204 (4th Cir. 2001).

None of these elements have been pled, nor can they be. RMA has only generally alleged the existence of business relationships. It has not pled with whom and how Signature interfered with that expectancy. But even if it could, the enumerated standard requires a finding of "intentional misconduct" on the part of the defendant, something that RMA cannot do here, because Signature has the right to

8

prevent RMA from entering its property for the clear reasons stated herein. Likewise, RMA asserts that it has a right without articulating for the Court the basis for its right to enter Signature's private property (where, in this case, it caused significant property damage). Instead, Signature's conduct falls squarely within lawful refusal to deal and property control. RMA cannot transform disappointed expectations into tort liability. As such, the request for injunctive relief fails.

### B. <u>Statutory Conspiracy</u>

Likewise, RMA's alleged cause of action based upon statutory conspiracy fails. In its original action in Circuit Court, RMA cites Virginia Code § 18.2-499, which provides for statutory conspiracy (Count III). The statute provides:

> A. Any <u>two or more persons</u> who combine, associate, agree, mutually undertake or concert together for the purpose of <u>(i) **willfully and maliciously** injuring another in his reputation, trade, business or profession by any means whatever</u> or (ii) **willfully and maliciously** compelling another to do or perform any act against his will, <u>or preventing or hindering another from doing or performing any lawful</u> act, shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.
> B. Any person who attempts to procure the participation, cooperation, agreement or other assistance of any one or more persons to enter into any combination, association, agreement, mutual understanding or concert prohibited in subsection A of this section shall be guilty of a violation of this section and subject to the same penalties set out in subsection A.
> C. This section shall not affect the right of employees lawfully to organize and bargain concerning wages and conditions of employment, and take other steps to protect their rights as provided under state and federal laws.

Similarly, Virginia Code §18.2-500[2] provides as follows:

> A. Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.
>
> B. Whenever a person shall duly file a civil action in the circuit court of any county or city against any person alleging violations of the provisions of § 18.2-499 and praying that such party defendant be restrained and enjoined from continuing the acts complained of, such court shall have jurisdiction to hear and determine the issues involved, to issue injunctions pendente lite and permanent injunctions and to decree damages and costs of suit, including reasonable counsel fees to complainants' and defendants' counsel.

---

[2] RMA cited Va. Code §18.2500 but there is no §18.2500. Presumably RMA intended to cite to Va. Code § 18.2-500.

9

As for the claim of conspiracy, Signature did not conspire under Virginia Code § 18.2-499, because (1) Signature was the only party that demanded RMA cease operations on Signature's locations; and (2) it did not act willfully and maliciously. There is no colorable[3] allegation or evidence of a second party or entity to have injured RMA, as required to meet the statutory definition of conspiracy. *See Ocasio v. U.S.*, 578 U.S. 282, 286, 136 S.Ct. 1423 (2016) ("Conspiracy, in the modern law, is generally defined as a confederacy of two or more persons to accomplish some unlawful purpose."). The Supreme Court of Virginia has held that "a corporation, like an individual, cannot conspire with itself." *Bowman v. State Bank of Keysville*, 229 Va. 534, 541 (1985). Further, "an agent cannot conspire with its principal." *Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000). The intra-corporate conspiracy doctrine applies to conspiracy claims under both common law and Va. Code § 18.2-499, -500. *Inman v. Klockner-Pentaplast of Am., Inc.*, 467 F. Supp. 2d 642, 654 (W.D. Va. 2006) (applying intra-corporate conspiracy doctrine to dismiss civil conspiracy claim under Va. Code §§ 18.2-499, -500). Absent such concerted action, the claim fails.

### C. Signature's Conduct Was Justified as a Matter of Law

Signature's exclusion of RMA from private aviation facilities was based on safety, risk management, and control of private property. The Supreme Court has repeatedly affirmed that property owners may regulate access to protect safety and operational integrity. In *Hudgens v. NLRB*, the Court held that private property owners retain the right to exclude others absent a statutory or contractual obligation to permit access. 424 U.S. 507, 519 (1976).

Nothing in federal law or regulation compels Signature to grant a private bus company access to restricted aviation areas, irrespective of what RMA incorrectly alleges. The Supreme Court has held, even recently, that the right to exclude is "a fundamental element of the property right." *Cedar Point*

---

[3] RMA alleged Signature Aviation Services Corporation somehow was a second involved party. That entity falls under the Signature Aviation umbrella and is an affiliate of Signature Flight Support LLC, *i.e.*, it shares a parent company. It does not operate any FBOs, has ZERO employees and RMA offers no good faith evidence, nor would any exist, that anyone at Signature Flight Support LLC conspired with an affiliate in making the decision to ban RMA from its leaseholds.

*Nursery v. Hassid*, 594 U.S. 139, 140, 141 S. Ct. 2063, 2066, 210 L. Ed. 2d 369 (2021), quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 179–180, 100 S.Ct. 383, 62 L.Ed.2d 332.

RMA's attempt to recharacterize Signature's safety-based exclusion as "improper" is inconsistent with this precedent, when Signature is merely attempting to advance the legitimate business justification of not having private bus companies come on its property, cause more than $5 million dollars in alleged damage, and then fail to take responsibility for it. Consistent with its "right to exclude" recognized by the Supreme Court in *Cedar Point Nursery*, supra, it is clear that equity does not create contractual access rights that do not otherwise exist. Signature took an appropriately measured action for its own protection. As such, Signature's conduct is not "improper," and the relief requested by RMA must be denied.

## **CONCLUSION**

RMA seeks to use injunctive relief not to preserve the status quo, but to compel a private company to open its security-restricted aviation facilities to a third-party commercial operator, notwithstanding the absence of any contractual duty, statutory obligation, or legal right of access. Equity does not create rights where none exist, nor does it override a private entity's fundamental right to control its own private property. Because RMA's alleged injuries are economic, speculative, and, in large part, self-inflicted, and because RMA cannot establish liability on the merits, the extraordinary remedy of mandatory injunctive relief is unavailable as a matter of law.

The Supreme Court has made clear that a movant's failure to satisfy its burden on any *Winter* factor precludes injunctive relief. *Winter*, 555 U.S. at 23–24. Because RMA cannot establish a clear showing of irreparable harm or likelihood of success on its claims, the Court need not reach the remaining factors. *Winter* and binding Fourth Circuit precedent foreclose the relief Plaintiff seeks. For these reasons, the Court should deny RMA's request for injunctive relief.

                        **SIGNATURE FLIGHT SUPPORT LLC, and SIGNATURE AVIATION SERVICES CORPORATION**

                        By Counsel

*/s/ Danielle D. Giroux*
Jon A. Nichols (VSB No. 48613)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jnichols@hccw.com

Danielle D. Giroux (VSB No. 45401)
Harman, Claytor, Corrigan & Wellman
1900 Duke Street, Suite 210
Alexandria, Virginia 22314
804-747-5200 - Phone
804-747-6085 - Fax
dgiroux@hccw.com