IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

ERRANDS PLUS INC., D/B/A RMA
WORLDWIDE CHAUFFEURED
TRANSPORTATION,

    Plaintiff,

v.                                Case No. 3:25-cv-00098-JHY-JCH

SIGNATURE FLIGHT LLC AND
SIGNATURE AVIATION SERVICES
CORPORATION,

    Defendant.

### SECOND DECLARATION OF JON A. NICHOLS

I, Jon A. Nichols, declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief.

1.    I am over the age of eighteen, suffer no legal disabilities, have personal knowledge of the facts set forth below, and am competent to testify. I am submitting this declaration to address the request for a supplemental response (ECF Doc. 65) to the Court's February 19, 2026 show cause order.

2.    I am attaching documentation of my research efforts related to the two citations identified in the Court's February 25, 2026 order. These include my Westlaw search history from December 26, 2025 (Exhibit A) and three pages out of my handwritten notes from preparation of the Supplemental Brief, pages that pertain to these two citations (Exhibit B).

3.    I believe the incorrect citations resulted from drafting errors associated with a misinterpretation of my incomplete notes. My handwritten notes include references to *Dunn v.*

1

*Cloney* and *Ward v. Coastal Carolina,* and include the citations that I believe I accidentally transposed into the brief, including incorrect reporter numbers, page numbers, and year.

4.      Based upon my best recollection and my personal notes regarding the research I conducted during the drafting of the Supplemental Brief submitted on December 26, 2025, a more detailed explanation follows below.

## Researching and Writing the Supplemental Brief

5.      Due to the expedited timeline and the holiday, I requested that my associate, Ms. Spell, complete an initial draft of Signature's brief based on our strategy discussions, which she completed on December 22, 2025.

6.      To ensure a complete understanding of the authorities cited in Ms. Spell's draft, I followed my standard practice of handwriting a list of the cases to review them. I read each of the cases, mostly through Justia and Find Law, from my tablet and/or phone. I made handwritten notes for each case and how I might incorporate it into the argument.

7.      I woke up early on December 26 and worked from home for several hours. During that time, I continued to read the cases cited and continued to make various handwritten notes about them. I also began to revise and supplement the brief at that point.

8.      During the course of approximately three days, I reviewed more than sixty cases relating to preliminary injunction standards, tortious interference, civil conspiracy, and other issues.

## Determining the Origin of the Incorrect Citations

9.      The authorities I intended to cite were (1) *Dunlap v. Cottman Transmission Systems, LLC,* 287 Va. 207, 754 S.E.2d 313 (2014), and (2) *Carty v. Westport Homes of N. Carolina, Inc.,* 472 F. App'x 255 (4th Cir. 2012).  I reviewed a substantial number of cases over

2

a short period of time during the holiday schedule and failed to adequately verify two citations before filing the brief. My reliance on my handwritten notes and transposing notes into the brief without checking against the actual citations likely resulted in the citation errors, for which I am fully responsible.

***Dunlap v. Cottman* and *Dunn v. Cloney***

10.     I knew at the time that the *Dunlap v. Cottman* case was one I wanted to include because it addresses the nuance between "improper methods" and intentional interference, as opposed to a lack of intent and business interests.

11.     My handwritten notes include the following reference: "Dunnlap v. Cloney," followed by a reporter number, page number, year and court that appears to largely match the citation on page 7 of the supplemental brief. Exhibit B, Page 1.

12.     The citation I used for *"Dunn Construction Co. v. Cloney"* does not match either the actual citation for that Supreme Court of Virginia case nor the citation for any of the *Dunlap* cases. However, the citation I used largely matches that which follows "Dunnlap v. Cloney" in the handwritten note I made. Ex. B, Page 1.

13.     The *Dunn v. Cloney* case is also cited in the *Dunlap v. Cottman* decision in the Supreme Court of Virginia, as is another case called *Dunn v. Connolly,* 281 Va. 553, 708 S.E.2d 867 (2011). I read cases involving *Dunlap v. Cottman, Dunn v. Cloney*, and *Dunn v. Connolly,* all of which were included in one opinion addressing an issue of importance.

14.     The similarity of party names led to greater confusion. Dunn and Dunlap, Cloney, Cottman and Connolly are similar names. This is further evident in my handwritten notes when I inadvertently wrote it as "Dunnlap." Exhibit B, Page 1.

3

15.     I cannot state with certainty how I included that incorrect citation in my handwritten notes. The case that I intended to cite, *Dunlap v. Cottman (cited as 287 Va. 207)*, had a Supreme Court of Virginia citation beginning with 287.  The *Dunn v. Cloney* matter had a Supreme Court of Virginia citation starting with *278*.  From my further review, I believe I transposed those first three numbers using the Supreme Court of Virginia citation, lost my place or became distracted by working on a different section, and later completed the citation incorrectly.

16.     As for the remainder of the incorrect cite, I must have inadvertently entered a partial citation from a case that was cited in *Subsalve USA Corp. v. Watson Mfg., Inc.,* 462 F.3d 41, 47 (1st Cir. 2006), which I reviewed after reading *Hudgens v. N.L.R.B.,* 424 U.S. 507 (1976), a case that states "The Constitution by no means requires such an *attenuated* doctrine of dedication of private property to public use." I decided not to use that case because it did not apply, despite its inclusion of *attenuated.*

17.     *Subsalve* cites to *Carefirst of Maryland v. Carefirst Pregnancy Centers*, a case that contains the second half of the incorrect string cite that I used, **F.3d 253, 262 (4th Cir. 2002).** (Note that Carefirst is actually a 2003 case, but it is referenced in the *Subsalve* opinion as being from 2002, where this citation appears).  While I did not intend to rely on *CareFirst* and it does not appear in my research notes, the partial citation appears consistent with a string citation contained in *Subsalve USA Corp. v. Watson Mfg., Inc.*, which I reviewed during my research. See Exhibit B, at 1.

18.     I cannot state for certain why my handwritten notes contained the incorrect citation, but it is likely that I transposed the incorrect citation from these notes into page 7 of the

4

brief. This was careless on my part, and I am deeply embarrassed, but I intended no deception to the Court.

### *Ward v. Coastal Carolina* and *Carty v. Westport Homes of North Carolina*

19.     I have likewise endeavored to determine how I cited to *Ward v. Coastal Carolina Healthcare* when I intended to cite to *Carty v. Westport Homes of North Carolina.*

20.     Ward/Westport, Coastal Carolina/North Carolina are similar names. Both case names appear in my handwritten notes.

21.     I read *Ward v. Coastal Carolina Health Care, P.A.,* 597 F. Supp. 2d 567 (E.D.N.C. 2009). I specifically recall reading this case because the CEO for Coastal Carolina Healthcare was named Nuckolls, similar to my name and a name in the firm that I first worked for when I moved to Virginia. I am not certain that, at the time, I noted that it was a district court case, as I was more focused on conspiracy, and this one included description of a "private conspiracy." *Id.* at 571. I did, however, dismiss this case for inclusion because it likewise addressed a public right under a statute to prevent racial discrimination.

22.     My notes after this are admittedly poor. *Carty* is the next case that appears in my notes, but I appear to have attributed the relevant holdings to the *Ward* case instead of the *Carty* case with the use of arrows. See Ex. B, at 2. The law reflected in these notes is correct, including the five-part test (also noted on Page 2) that made the exact point I was trying to make. *Carty* states: "The five elements necessary for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) **defendant's intentional inducement of breach of the contract**; (4) the absence of justification; and (5) damages resulting from defendants wrongful inducement of the breach." *Carty v. Westport Homes of N. Carolina, Inc.,* 472 F. App'x 255, 260 (4th Cir. 2012)

5

*citing United Labs., Inc. v. Kuykendall,* 322 N.C. 643, 662, 370 S.E.2d 375, 387 (1988). This made it suitable for my purpose and for inclusion.

23.    It appears from my notes that I handwrote the incorrect citation that I used in the Supplemental Brief in an effort to cite to *Carty.* I wrote 597 F.3d 381, 393 (4th Cir. 2010). Ex. B, Page 2. It should have been *Carty v. Westport Homes of N. Carolina, Inc.,* 472 F. App'x 255, 260 (4th Cir. 2012).

24.    The first part of the correct citation in *Ward* is 597, so it likely came from the arrows attributed to *Ward.* Then the remainder of the citation should have been F. Supp. 2d 567 (E.D.N.C. 2009) but became 597 F.3d 381, 393 (4th Cir. 2010).

25.    I believe my incorrect reference to "F.3d 381" was a mistaken reference to the *Broussard v. Meineke* case, which dealt with the same concept. *Broussard* states essentially the same standard as *Carty,* that interference with contractual relations requires: "First, that a valid contract existed between the plaintiff and a third person.... Second, that the outsider had knowledge of the plaintiff's contract with the third person. **Third, that the outsider intentionally induced the third person not to perform his contract with the plaintiff.** Fourth, that in so doing the outsider acted without justification. Fifth, that the outsider's act caused the plaintiff actual damages." *Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 351 (4th Cir. 1998). I believe my handwritten notes, which indicate what looks like 331 became 381 when re-written by hand elsewhere, up and to the right of the page. Ex. B, Page 2. While I could have used *Broussard,* I preferred the language of the *Carty* case, and that is the citation I intended to use.

26.     As with the first error, I cannot state for certain why my handwritten notes contained the incorrect citation, but it is likely that I transposed the incorrect citation from these notes into page 8 of the brief.

### Verification Processes and Additional Steps to Prevent Reoccurrence

27.     The brief was submitted to Westlaw's Quick Check citation checking tool with the expectation that any incorrect citations would be flagged and identified before submission to the Court.  I believed that any incorrect citations would be corrected in the review process, through Westlaw's Quick Check.  I have learned that on February 26, 2026, a Westlaw representative confirmed for my firm that Westlaw Quick Check does not flag incorrect citations. This is not how I believed it worked.  Regardless, I should have manually verified citations in Westlaw before the brief was submitted.

28.     I understand the seriousness of this issue and agree that it is unacceptable.  I should have demonstrated greater care in the haste of completing the brief requested by the Court.  Moreover, I should have used more traditional research methods to document the manner in which I arrived at the cases I chose to include in the supplemental brief. I offer no excuse for these ineffectual and sloppy methods, but assure the Court that the principle for which these two incorrect citations were offered were intended to be correct.  If the proper cases were substituted, the arguments track and are consistent.

29.     I sincerely apologize to the Court, opposing counsel, my client, and my firm for this and truly wish that this had never happened.  It is terribly embarrassing in all respects, and I regret the embarrassment that I have caused my firm, whose reputation is second-to-none. I also

regret the burden this has imposed on the Court and its personnel. These were unacceptable errors, and I am deeply sorry.

30.    I have learned a very difficult lesson about documenting my work electronically and employing additional procedural safeguards to prevent this sort of thing from happening. Going forward, I will modify my method of research to create more reliable methods of checking citations. I will work carefully with others in my office to ensure multiple sets of eyes view the product before it is submitted. I will produce a product worthy of my firm and of the Court's time. I have spoken with my partners, Jeremy Capps, David Corrigan, and other members of the firm's Board about additional steps we as a firm will be implementing to ensure that we seek to prevent such mistakes in the future, including manually checking the accuracy of each citation before submission.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

_____
Jon A. Nichols

8