IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

ERRANDS PLUS INC., D/B/A RMA
WORLDWIDE CHAUFFEURED
TRANSPORTATION,

    Plaintiff,

v.

Case No. 3:25-cv-00098-JHY-JCH

SIGNATURE FLIGHT LLC AND
SIGNATURE AVIATION SERVICES
CORPORATION,

    Defendants.

## DECLARATION OF JEREMY CAPPS

I, Jeremy D. Capps, declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief and make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am over the age of eighteen, suffer no legal disabilities, have personal knowledge of the facts set forth below and am competent to testify.

2. I am the Executive Vice President of Harman, Claytor, Corrigan & Wellman, P.C. and serve on the Firm's Board of Directors. I am an attorney admitted to practice in the Commonwealth of Virginia and before the Supreme Court of Virginia, the United States Court of Appeals for the Fourth Circuit and the United States District Courts for the Eastern and Western Districts of Virginia.

3. Jon Nichols advised me of the Court's February 19, 2026 Show Cause Order (ECF Doc. 59) on February 19, 2026, and I and others at our Firm were involved in responding to the issues raised by the Court on February 20, 2026.

1

4.    As background, Mr. Nichols has been employed with our Firm for 18 years. He is a Shareholder and a member of the Board of Directors. Danielle Giroux has been employed with our Firm for 22 years. She is a Shareholder and a member of the Board of Directors.

5.    After submission of the Response to the Show Cause Order, Mr. Nichols advised me of the Court's February 25, 2026 Order (ECF Doc. 65) requesting a supplemental response to the Court's February 19, 2026 Order. Again, I and others have devoted significant time to address and respond to the Court's Order.

6.    I am submitting this declaration to address the Court's request to provide information about the verification processes that are in place at Harman, Claytor, Corrigan & Wellman to confirm the existence and accuracy of legal and factual citations that are offered in submissions to this Court and other courts and what steps our Firm has taken to prevent the reoccurrence of the issues identified in the Court's February 19, 2026, Order.

7.    Acting with integrity, civility and professionalism is a bedrock principle of our Firm. The accuracy of the representations and citations that our attorneys provide to the Court is at the core of this principle and stressed to our lawyers. Each lawyer in this Firm is responsible for ensuring the accuracy of every citation submitted to the Court and we take seriously our obligations under Rule 11 of the Federal Rules of Civil Procedure and the Virginia Rules of Professional Conduct. It has been the Firm's expectation that its lawyers will independently verify that all legal citations submitted to the Court are accurate.

8.    The Firm contracts with Westlaw to provide legal research services. Our subscription permits our lawyers access to all state and federal case law and secondary legal sources. Westlaw provides a tool called "Quick Check." This allows our lawyers and staff to upload a brief to Westlaw which in turn provides a report with recommendations for additional

2

relevant authority, warnings for cited authority (i.e. negative treatment) and an analysis of quotations to confirm accuracy. It is my understanding that Mr. Nichols and Ms. Giroux utilized and relied on Westlaw's Quick Check to review the citations in the supplemental brief submitted to the Court. Westlaw also provides a tool called "drafting assistant." This tool also allows our lawyers and staff to upload a brief to Westlaw which in turn provides a report with citation confirmation and warnings for cited authority to compare with the case citations in the brief.

9.      Our Firm has also formed an Artificial Intelligence Committee ("AI Committee") to monitor and address the evolving use of artificial intelligence in the legal field. After studying the issues involving artificial intelligence, the AI Committee recommended on October 27, 2025, that the Firm adopt a firm-wide Artificial Intelligence policy ("Policy") to ensure that the Firm's lawyers comply with the Virginia Rules of Professional Conduct and their professional responsibilities to clients and the Court. The Board of Directors reviewed and considered the proposed Policy and agreed to adopt the Policy on December 6, 2025. After minor revisions, the Policy was implemented on December 8, 2025.

10.      A core principle of the Policy adopted by the Board is that before any brief or memoranda is submitted to the Court, our lawyers must complete independent verification of the legal theories, factual assertions, and supporting research (including cited statutes, cases, treatises, or other cited works) to ensure the correctness and accuracy of the submission.

11.      The Policy was discussed during the Firm's attorney retreat on January 22, 2026, with a presentation that stressed that our lawyers must independently verify all citations to the Court. Following the presentation, all lawyers present signed an acknowledgement that they understood and agreed to comply with the Policy. In addition to our lawyers, the Firm has also required all employees to read and comply with the Policy. New employees are required to read

3

and acknowledge the Policy as part of the onboarding process. Additionally, all employees are required to review and acknowledge the Policy yearly, along with completing a yearly training video on the use of AI.

12.    Despite these efforts, it is obvious and disappointing that we did not meet our expectations and our obligations to the Court in this case. The errors in the legal citations filed with the Court are not acceptable. The Board is committed to ensuring that this does not happen in the future.

13.    In consultation with Westlaw, I have learned that the citation tool Quick Check, while it checks for negative authority for citations, does not identify or "flag" incorrectly cited authority. Similarly, Westlaw's drafting assistant tool does not identify or "flag" incorrect cited authority. Instead, it is my understanding drafting assistant looks for a citation that most closely matches the incorrect citation that was included in the brief submitted for review and produces a report that includes Westlaw's new citation.

14.    After consultation with Westlaw, it is apparent that the use of Westlaw's citation checking tools are not a substitute for human manual review and confirmation of each citation.

15.    Accordingly, in addition to the use of Westlaw's cite checking tools, our Firm is reiterating to all lawyers and staff that before submitting a pleading or brief with the Court there must be a human manual review and confirmation of each citation contained within the submission to verify the accuracy of all legal citations. Additionally, the Firm will be requiring annual training on the research platforms and citation checking tools offered by the Firm along with reinforcement of each lawyer's responsibility and obligations to manually review and confirm the accuracy of all legal and factual citations.

4

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: ~~Feb~~ March 5, 2026 (date)

Jeremy D. Capps