IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

March 31, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Kayla Lokey**
DEPUTY CLERK

|  |  |  |
|---|---|---|
| Errands Plus, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Signature Flight Support, LLC | ) | Civil Action No. 3:25-cv-00098 |
| | ) | |
| and | ) | |
| | ) | |
| Signature Aviation Services Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

This matter is before the court on its Order to Show Cause, (Dkt. 59), which directed Defendant's counsel to explain two citations of non-existent cases in Defendant's supplemental brief submitted to the court, (Dkt. 17). By his own admission, Jon A. Nichols of Harman, Claytor, Corrigan & Wellman, P.C. was fully responsible for the citation errors. (*See* Dkt. 62 at 2; Dkt. 76 ¶ 9.) After reviewing Nichols's responses, (*see* Dkts. 62, 76), the court will not impose any sanctions on Nichols or his law firm at this time.

### I.    Background

On December 26, 2025, Defendant's counsel submitted a supplemental brief to the court. (Dkt. 17.) While Nichols was not the signing attorney on the brief, this was only because he had technology issues before the filing deadline and asked his colleague to file. (*See*

Dkt. 62–1 ¶ 9.)  Nichols submits that he is responsible for adding two citations to the brief citing Fourth Circuit cases that do not exist.  (Dkt. 62–8 ¶ 11.)

(1) On Page 7 of the brief, counsel wrote "in *Dunn Construction Co. v. Cloney*, the Fourth Circuit emphasized that conduct motivated by legitimate economic interests—even if it disadvantages another party—does not amount to tortious interference.  278 F.3d 253, 262 (4th Cir. 2002)."

(2) On Page 8 of the brief, counsel wrote "[t]o succeed on a tortious interference with contract claim, RMA must show intentional inducement of breach. . . . In *Ward v. Coastal Carolina Health Care, P.A.*, the Fourth Circuit held that a defendant must act 'with the purpose of causing a breach.'  597 F.3d 381, 393 (4th Cir. 2010)."

(Dkt. 17 at 7, 8.)  As the court noted in its show cause order, neither case exists.  *Dunn Construction Co. v. Cloney* appears to be a Virginia Supreme Court case, 682 S.E.2d 943 (Va. 2009), that discusses the source of duty rule.  *Ward v. Coastal Carolina Health Care, P.A.* appears to be a case from the Eastern District of North Carolina, 597 F. Supp. 2d 567 (E.D.N.C. Jan. 8, 2009), which is primarily about sex discrimination and retaliation claims under Title VII. Neither case appears to support the argument made by Defendant in its supplemental brief.

On February 19, 2026, the court ordered Defendant's counsel to show cause as to why counsel should not be sanctioned or referred to the Virginia State Bar for professional misconduct for citing non-existent cases to the court.  (Dkt. 59 at 2.)  Counsel responded the next day, providing sworn statements from all counsel of record for Defendant and a tenuous explanation from Nichols as to how the incorrect citations were included in the brief.  (*See*

Dkt. 62.)  After reviewing the response, the court ordered Nichols to submit a more detailed response and to include any documentation of his research related to the two citations.  (Dkt. 65.)  The court also ordered Nichols to provide more information about (1) verification procedures in place for submissions to the court for Nichols himself and for his law firm and (2) the steps Nichols and his law firm have taken or will take to prevent the recurrence of problems like the one at hand.  (*Id.*)

Nichols responded on March 5, 2026, further explaining how the incorrect citations were included in the brief and providing excerpts of his Westlaw history and handwritten notes that he used to prepare the brief.  (Dkts. 76, 76–1, 76–2.)  Nichols submits that "the incorrect citations resulted from drafting errors associated with a misinterpretation of [his] incomplete notes," which included references to the two relevant case names and the incorrect reporter numbers, page numbers, and year.  (Dkt. 76 ¶ 3.)  He explains that he "cannot state for certain" why his handwritten notes contained the incorrect citation information, but that "it is likely" that he added the incorrect information to the brief because he transposed it from his notes. (*Id.* ¶¶ 18, 26.)

The supplemental response also included a declaration from the Executive Vice President of Harman, Claytor, Corrigan & Wellman, P.C.  (Dkt. 76–3.)  He avers that the firm recently adopted a firm-wide policy on artificial intelligence that features a core principle requiring lawyers to "complete independent verification of the legal theories, factual assertions, and supporting research" before submitting any materials to the court.  (*Id.* ¶¶ 9– 10.)  The policy was implemented on December 8, 2025, and was presented firmwide at a

retreat on January 22, 2026.  (*Id.* ¶¶ 9, 11.)  Following the presentation, all lawyers present were required to sign an acknowledgement that they understood and agreed to comply with the policy.  (*Id.* ¶ 11.)  The declaration attests that the firm will reiterate to all lawyers and staff that each citation must be reviewed by a human for accuracy before submitting materials to the court.  (*Id.* ¶ 15.)

## II.    Discussion

Federal Rule of Civil Procedure 11(c) allows district courts to sanction attorneys who "do not take the necessary care in their preparation of court filings."  *Iovino v. Michael Stapleton Assocs., Ltd.*, No. 5:21-cv-00064, 2024 WL 3520170, at *6 (W.D. Va. July 24, 2024) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990)) (cleaned up).  A key purpose of Rule 11 is to incentivize attorneys to "stop, think, and investigate more carefully before serving and filing papers" to avoid "burdening courts and individuals alike with needless expense and delay."  *Id.* (quoting *Cooter & Gell*, 496 U.S. at 398) (cleaned up).  Provided the offending attorney has "notice and a reasonable opportunity to respond," the court may impose sanctions *sua sponte* or upon a motion by the opposing party for any violation of Rule 11.  Fed. R. Civ. P. 11(c)(1); *see Boshea v. Compass Marketing, Inc.*, Civ. No. ELH-21-309, 2025 WL 3033933, at *12 (D. Md. Oct. 30, 2025).  Courts may also impose sanctions *sua sponte* under their inherent authority to "preserve the integrity of the judicial process."  *In re Jemsek Clinic, P.A.*, 850 F.3d 150, 157 (4th Cir. 2017).

While the Fourth Circuit does not appear to have addressed the standards for issuing *sua sponte* sanctions under Rule 11, other circuit courts have found that for such sanctions,

attorneys should be measured under an objective reasonableness standard. *See, e.g.*, *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 148 (3d Cir. 2024) ("Not even *sua sponte* Rule 11 sanctions (those on the court's own initiative) require subjective bad faith. So lawyers can be sanctioned for objectively unreasonable conduct—in a word, negligence." (citations omitted)); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (noting that the "the standard under which an attorney is measured [under Rule 11] is an objective*, not subjective,* standard of reasonableness under the circumstances" (quoting *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994))). While courts can sanction lawyers for "what they should have known, not what they knew," *sua sponte* sanctions "call for more caution." *Wharton*, 95 F.4th at 148.

Based on its review of all materials submitted to the court, the court finds Nichols did not intentionally include the non-existent cases in the supplemental brief to mislead the court. Rather, it appears that such errors stemmed from Nichols's disorganization, mistaken reliance on Westlaw Quick Check, and lack of cite-checking by any human for accuracy. Although the court had to ask again for further explanation, Nichols was eventually forthcoming about his research process and provided the court with his contemporaneous handwritten research notes. The incorrect reporter numbers, page numbers, years, and courts that were cited in the brief do appear in those handwritten notes. (*See* Dkt. 76-2 at 2, 3.) Further, Nichols never wavered in accepting responsibility for the brief itself and for the specific citation errors. The court accepts Nichols's representation that that he "understand[s] the seriousness of this issue

and agree[s] that it is unacceptable," that he is "deeply embarrassed," and that he "intended no deception to the Court." (Dkt. 76 ¶¶ 18, 28.)

Although Plaintiff never pointed out the errors or moved for sanctions, the court has spent a significant amount of time, effort, and resources in confirming all cases cited in the supplemental brief and all other briefs filed by the law firm in this case. In other words, even when citation errors like this are caused by sloppy drafting, an immense amount of the court's scarce resources are wasted. As artificial intelligence tools are used with increasing frequency to assist legal writing, blatant citation errors like those in the supplemental brief cast doubt upon the entirety of a party's filing and a law firm's work product. The court relies on counsel's adherence to their legal, professional, and ethical responsibilities when submitting materials to the court. As evidenced in this case, relying solely on electronic citation checking tools, without understanding the extent to which the tools check for fictitious cases, is simply insufficient to ensure that these responsibilities are met.

Nichols assures the court that he will "modify [his] method of research to create more reliable methods of checking citations," and that he has talked to other partners at his law firm about implementing citation checking steps "including manually checking the accuracy of each citation before submission." (Dkt. 76 ¶ 30.) And his law firm promises that it will "reiterate[] to all lawyers and staff that before submitting a pleading or brief with the Court there must be a human manual review and confirmation of each citation contained within the submission to verify the accuracy of all legal citations." (Dkt. 76-3 ¶ 15.) The firm also implemented a new policy requiring independent verification of citations for materials submitted to the court and

will require annual training on citation verification.  (*Id.* ¶¶ 9–11, 15.)  The court recognizes that counsel has engaged in several meaningful discussions because of these errors, and trusts that he will not make the same mistakes going forward.  Based on these representations, which the court accepts, sanctions do not appear necessary to deter these types of mistakes in the future from counsel or his law firm.

For those reasons, the court will not impose any sanctions at this time.  But the court warns Nichols and his law firm that it will not tolerate similar violations in the future that stem from using legal research databases and tools, without verifying the accuracy of case citations, not only in this case but also in other cases where Nichols and his law firm appear before this court.

**IT IS SO ORDERED**.

**ENTERED** this 31st day of March, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE